## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS DALLAS DIVISION

| | |
|---|---|
| BETSY SANCHEZ OLVERA, AND WILLIE D. WILSON, INDIVIDUALLY AND ON BEHALF OF ALL THOSE SIMILARLY SITUATED, <br><br> Plaintiff(s), <br><br> v. <br><br> MH CONSULTANTS, INC. D/B/A MANUFACTURED HOUSING CONSULTANTS and CORELOGIC CREDCO, LLC, <br><br> Defendant(s). | CLASS ACTION: 3:23-cv-746 <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES, Plaintiffs Betsy Sanchez Olvera and Willie D. Wilson ("Plaintiffs"), *individually and on behalf of all those similarly situated*, and bring this *Class Action Complaint* against Defendants MH Consultants, Inc. d/b/a Manufactured Housing Consultants ("MHC") and CoreLogic Credco, LLC ("CoreLogic"), collectively referred to as the ("Defendants") and respectfully sets forth, complains, and alleges, upon information and belief, the following:

### PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages, costs, and attorney's fees pursuant to 15 USC §1681 et seq. the Fair Credit Reporting Act ("FCRA").

### JURISDICTION & VENUE

2. Plaintiffs bring this action under §1681 et seq. of Title 15 of the United States Code, commonly referred to as the Fair Credit Reporting Act ("FCRA") for actual and statutory damages, costs, and reasonable attorney's fees against the Defendants.

3. This Court has jurisdiction over this action and all counts under 28 U.S.C. § 1331, 1334, and 15 U.S.C. § 1681(p).

4.   Venue in this District is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred here.

5.   Venue is further proper in this District because Plaintiffs reside in this district.

## PARTIES AND SERVICE

6.   Plaintiff, Betsy Sanchez Olvera, ("Plaintiff Olvera" or "Ms. Olvera") is a consumer who resides in Dallas County, Texas.

7.   Plaintiff, Willie D. Wilson, ("Plaintiff Wilson" or "Mr. Wilson") is a consumer who resides Dallas County, Texas.

8.   Defendant MH Consultants, Inc. d/b/a Manufactured Housing Consultants ("MHC"), is a company duly authorized and qualified to do business in Texas and can be served with a copy of this Class Action Complaint along with the Summons upon its registered agent, MAURICIO LEMOS III, located at 13930 IH 35 South, Von Ormy, TX 78073.

9.   Defendant MHC is a "user" and a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b).

10.   MHC is a vendor who also facilitates in the financing and the purchasing of manufactured homes.

11.   Defendant CoreLogic Credco LLC. ("CoreLogic") is a Delaware Limited Liability Company Corporation Service Company registered to do business in the State of Texas and may be served with process upon Corporation Service Company d/b/a CSC – Lawyers INCO, its registered agent for service of process, at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

12.   CoreLogic is a reseller of consumer reports and other information to its clients, which consist of banks, mortgage companies, and other lending institutions.

13.   Defendant CoreLogic is a "user" and a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b).

14. "Consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—

    (A)    credit or insurance to be used primarily for personal, family, or household purposes;

    (B)    employment purposes; or

    (C)    any other purpose authorized under section 1681b of this title.

## FACTUAL ALLEGATIONS

15. Plaintiffs incorporate by reference all the above paragraphs of this Class Action Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

16. MHC and CoreLogic, without notice or permission, accessed Plaintiffs' consumer report under false pretenses, without any permissible purpose or authorization.

17. Defendants, as a part of their routine business practice, regularly obtain consumer credit report reports from consumers in Dallas County, Texas and elsewhere upon false pretenses, without authorization by the consumer, and without a permissible purpose.

18. MHC has been placed on notice of this illegal activity but has refused to discontinue the practice.

19. CoreLogic has been placed on notice of this illegal activity but has refused to discontinue the practice.

20. On or about late January 2023, Plaintiff Olvera, along with Plaintiff Wilson, contacted Manufactured Housing Consultants and left a voicemail indicating she was interested in purchasing a mobile home.

21. Plaintiff Olvera received a phone call from a sale representative of MHC by the name of Edward Sandoval ("Mr. Sandoval") on February 21st, 2023. Mr. Sandoval asked Ms. Olvera to provide him information regarding what they were looking for in a mobile home.

22. Plaintiff Olvera explained to Mr. Sandoval that she and her boyfriend, Willie D. Wilson, purchased a recreational vehicle ("RV") in May of 2021. They were interested in finding out if it would be possible to trade the RV as a credit and apply it for the purchase of a mobile home. Mr. Sandoval asked what the balance due on the RV was and asked for a rough idea of their credit scores, which Plaintiffs provided.

23. Based on the aforementioned conversation and the information provided, Mr. Sandoval informed Ms. Olvera not to worry because he had worked with all kinds of credit and that their situation was something easy to work with. Mr. Sandoval informed Ms. Olvera that by using her and Mr. Wilson's credit scores, the financing bank might want to use the land they owned as collateral in addition to the trading in of the RV. The Plaintiffs informed Mr. Sandoval that this would not be an option.

24. Mr. Sandoval informed the Plaintiffs not to worry that he was going to help them out. He proceeded to tell them that he was going to send Plaintiffs his business card, a pre-qualification form, and a website link for Plaintiffs to look at the mobile home inventory.

25. Mr. Sandoval informed Plaintiffs that once the prequalification form was filled out, he would be able to tell Plaintiffs what their best option regarding the use of the RV as a trade in would be.

26. Plaintiffs filled out the pre-qualification form on later that evening on https://www.cognitoforms.com/EdwardSandoval1/mhconsultantsprequalificationform.

27. The last question of the pre-qualification form stated, "I will allow access to my credit report for pre-approval," followed by two options, "Yes," or "No."

28. Plaintiffs selected "No".

29. By selecting No, Plaintiffs did not authorize for MHC or a third party to use and obtain or pull a copy of Plaintiffs' consumer reports as part of the pre-approval process for the purchase of a mobile home.

30. On or about February 22, 2023, Defendant CoreLogic made an impermissible and unauthorized pull or hard inquiry of both Plaintiff's consumer report. See copy of alert Plaintiffs received from Credit Karma of CoreLogic's hard inquiry attached as **Exhibit A**.

31. Plaintiffs called Mr. Sandoval once again on February 24th, 2023. Plaintiffs informed him that their credit reports had been requested without their permission as indicated on the pre-qualification form. Mr. Sandoval stated, "I guess I missed it." He went on to inform the Plaintiffs that Mr. Wilson's credit score was low and that even with both their credit scores combined, the down payment was going to be high regardless of the RV being traded in.

32. Mr. Sandoval proceeded to inform Plaintiffs that they had two other options which was to either put the land the Plaintiffs own as collateral or to put down a bigger down payment without the RV being traded in. These options were the options initially discussed prior to the check of the Plaintiffs' credit scores.

33. On or about March 3, 2023, Plaintiff Olvera decided to call the office in order to speak to a manager in regard to the situation they were placed in. Plaintiff Olvera was unable to reach a manager and left a message with the person who answered her call. She never received a call back.

34. As a result, Plaintiff Olvera decided to contact another branch in hopes of speaking to someone in a higher position. Plaintiff Olvera was advised to try again and if she did not get an answer to call them back so that they can point Plaintiff Olvera in the right direction.

35. Once again, Plaintiff Olvera called, and someone answered the phone and hung up.

36. Plaintiff Olvera called back again and asked to speak to the manager of the branch. Plaintiff Olvera was transferred to a manager, who, upon Plaintiffs' information and belief, is named Robert, and she explained that she and Mr. Wilson did not authorize for a third party to use and obtain or pull a copy of their consumer reports. Robert informed the Plaintiffs that Mr. Sandoval was under the weather and as a result he was not able to get into contact with them.

37. A few minutes later, Mr. Sandoval contacted Plaintiff Olvera and asked t what he could do to fix the situation.

38. Plaintiff Olvera requested that MHC remove the hard inquiry on Plaintiffs' credit reports for CoreLogic.

39. Another employee of MHC, Paola Villatoro, tried to offer a possible deal for one of the mobile homes involving a free TV to make up for the unauthorized credit pull.

40. Plaintiff Olvera advised Ms. Villatoro to stop calling and texting as they were no longer interested in doing business with MCH.

41. By impermissibly pulling and obtaining Plaintiffs' consumer report without Plaintiffs' authorization Defendants violated of the Federal Fair Credit Reporting Act, 15 U.S.C. § 1681b(f).

42. The Defendants did not have a permissible purpose to obtain the Plaintiff's credit report.

43. The Defendants knew or should have known that Ms. Olvera did not authorize any inquiry into her/his credit information at any time, nor initiated any credit transaction.

44. Discovery in this case will show that the Defendants, as a pattern and practice, regularly obtain consumer reports on consumers without a permissible purpose and/or under false pretenses.

45. Plaintiffs did not provide Defendants with authorization to obtain their credit reports from the credit reporting agencies.

46. As a result of Defendants' willful, wanton, reckless, and/or negligent action, Ms. Olvera has been damaged.

47. The consumer reports obtained by the Defendants included a trove of sensitive personal and private information about Ms. Olvera, such as credit history profile, pay histories, employer information and the like.

48. Ms. Olvera's privacy has been invaded as a result of the willful, wanton, reckless and/or negligent conduct of Defendants.

49. Ms. Olvera has lost trust and is suspicious and has been constrained to monitor her credit regularly to prevent unauthorized access to her sensitive credit information.

50. Ms. Olvera has suffered mental and emotional distress, worry, and aggravation as a result of the Defendants' actions.

51. The Defendants did not have a permissible purpose to obtain the Mr. Wilson's credit report.

52. The Defendants knew or should have known that Mr. Wilson did not authorize any inquiry into his credit information at any time, nor initiated any credit transaction.

53. As a result of Defendants' willful, wanton, reckless, and/or negligent action, Mr. Wilson has been damaged.

54. The consumer reports obtained by the Defendants included a trove of sensitive personal and private information about Mr. Wilson, such as credit history profile, pay histories, employer information and the like.

55. Mr. Wilson's privacy has been invaded as a result of the willful, wanton, reckless and/or negligent conduct of Defendants.

56. Mr. Wilson has suffered mental and emotional distress, worry, and aggravation as a result of the Defendants' actions.

57. Defendants' impermissible pull of Plaintiffs' consumer reports continues to affect Plaintiffs' creditworthiness, credit score, and ability to acquire credit on otherwise superior terms in addition to mental anguish, distress, and frustration and inability to obtain financing.

## CLASS ALLEGATIONS

### PROPOSED CLASSES

58. Plaintiffs bring this lawsuit as a class action under on behalf of Plaintiffs, individually and on behalf of all other similarly situated persons. Plaintiffs propose two categories of "Classes," the "Florida Class" and the "Texas Class" as defined as follows:

### THE FLORIDA CLASS

59. The "**FLORIDA CLASS**" consists of: **[1]** all persons with Florida addresses **[2]** that Defendants or someone on Defendants' behalf **[3]** pulled individual's credit report **[4]** without authorization from the class member and **[5]** without a permissible purpose.

60. Defendants and its employees or agents are excluded from the Classes.

61. Plaintiffs do not know the number of members in the Class but believes the Class members number in the several hundreds, if not more.

### THE TEXAS CLASS

62. The "**TEXAS CLASS**" consists of: **[1]** all persons with Texas addresses **[2]** that Defendants or someone on Defendants' behalf **[3]** pulled individual's credit report **[4]** without authorization from the class member and **[5]** without a permissible purpose.

63. Defendants and its employees or agents are excluded from the Classes.

64. Plaintiffs do not know the number of members in the Class but believes the Class members number in the several hundreds, if not more.

(The Florida Class and the Texas Class are collectively referred to herein as the "Classes.")

### NUMEROSITY

65. Upon information and belief, Defendants has pulled the credit reports of hundreds of consumers without authorization and without a permissible purpose, whereby such requests violate § 1681b; 1681q; 1681n and §1681o. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

66. Plaintiffs allege, on information and belief, that the Classes are so numerous that joinder of all members is impracticable because Defendants has pulled hundreds of credit reports without consumers' authorization and without a permissible purpose.

67. The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendants' records.

### COMMON QUESTIONS OF LAW AND FACT

68. There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the Classes are: **[1]** Whether Defendants pulled the Class members' credit reports without authorization from the Class members; **[2]** Whether Defendants pulled the Class members' credit reports without a permissible purpose; and **[3]** Whether Defendants should be enjoined from such conduct in the future.

69. The common questions in this case are capable of having common answers. If Plaintiffs' claim that Defendants routinely pull credit reports without authorization from consumers and without a permissible purpose is accurate, Plaintiffs and members of the Classes will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

70. Plaintiffs' claims are typical of the claims of the members of the Classes, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

71. Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Classes and have retained competent counsel. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Classes.

### SUPERIORITY

72. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by members of the Classes are in the millions dollars, the individual damages incurred by each member of the Classes resulting from Defendants' wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual members of the Classes prosecuting their own separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

73. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Classes, although certain class members are not parties to such actions.

## LEGAL ANALYSIS AND BACKGROUND

74. To prevail under § 1681b(f) of the FCRA, a plaintiff must show: (1) that the document at issue is a 'consumer report'; (2) that the defendant 'used or obtained' the consumer report; and (3) that the defendant did not have a permissible statutory purpose for obtaining the consumer report." In re Croft, 500 B.R. 823, 843 (Bankr. W.D. Tex. 2013).

<u>Credit Report issued with a Business Transaction</u>

75. Congress enacted the FCRA to protect individuals from inaccurate or arbitrary information in a consumer report and to establish credit reporting practices that use "accurate, relevant and current information in a confidential and responsible manner." St. Paul Guardian Ins. Co. v. Johnson, 884 F.2d 881, 883 (5th Cir. 1989) Kennedy v. Victoria's Secret Stores, Inc., No. 03-2691, 2004 U.S. Dist. LEXIS 3261, at *5 (E.D. La. 2004).

76. The FTC is no longer the entity with the "primary regulatory and interpretive roles under the FCRA" since the Consumer Financial Protection Act (CFPA) delegated those powers to the Consumer Financial Protection Bureau (CFPB). See FTC Report, 2011 WL 3020575 at *2. Perrill v. Equifax Info. Servs., LLC, 205 F. Supp. 3d 869, 877 (W.D. Tex. 2016)

77. Recently on July 7, 2022 the CFPB issued the advisory opinion "Fair Credit Reporting: Permissible Purposes for Furnishing, Using, and Obtaining Consumer Reports" ("Permissible Purposes Opinion") which clarifies that "permissible purposes" under the FCRA have a "consumer

specific" requirement. Therefore, a CRA must have "reason to believe that all of the consumer report information" provided to a user "pertains to the consumer who is the subject of the user's request."

78. The CFPB Permissible Purposes Opinion states,

> FCRA section 604(f) prohibits a person from using or obtaining a consumer report "unless . . . the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under [FCRA section 604]" and "the purpose is certified in accordance with FCRA section 607 by a prospective user of the report through a general or specific certification."  Congress amended the FCRA to include section 604(f) in September 1996.  Before the 1996 amendments, FCRA section 604 did not impose limitations on users of consumer reports, only on consumer reporting agencies.  The Bureau interprets FCRA section 604(f) to provide that consumer report users are strictly prohibited from using or obtaining consumer reports without a permissible purpose.  Although some courts have applied a "reason to believe" standard for persons using or obtaining a consumer report, as at least one court has noted, the opinion most commonly cited in support of this standard was decided before the 1996 amendments. Based on its plain language, the 1996 addition of FCRA section 604(f) clearly imposes a strict prohibition on using or obtaining a consumer report without a permissible purpose. Users of consumer reports must ensure that they do not violate consumer privacy by obtaining consumer reports when they lack a permissible purpose for doing so. For example, in 2018 a company settled Bureau allegations that it violated FCRA section 604(f) when its agents obtained consumer reports for consumers who were not seeking an extension of credit from the company and the company had no other permissible purpose for the consumer reports it obtained. In some instances, for example, the company's agents initiated credit applications for the wrong consumer by incorrectly inputting consumer information into the company's application system or by selecting the wrong consumer from a list of possible consumers identified in the system. When these applications were initiated in error, the company obtained a consumer report for a consumer with respect to which it had no permissible purpose, violating the FCRA's permissible purpose provisions and the privacy of the consumers that were the subject of those reports, and also generating an inquiry on the consumers' credit reports. In re State Farm Bank, FSB, 2018-CFPB-0009, at ¶¶ 17-19 (Dec. 6, 2018).

79. The authoritative case on this matter in the 5th Circuit is Estiverne v. Sakes, 9 F.3d 1171 (1993). That case is deferential to the authoritative agency's—then the FTC, now the CFPB—guidance on the FCRA. The CFPB recommends that users' reasonable policies and procedures to

ensure a permissible purpose include consumer consent. See CFPB Supervisory Highlights, at 2.1.1, Issue 22 Summer 2020.

80. The CFPB recommends consumer consent for any permissible purpose and it is reasonable to infer that Defendant would need to have policies and procedures to verify a permissible purpose exists in high-risk identity theft scenarios.

81. Clearly, the CFPB wants some safeguards in place to avoid situations Plaintiff is now in.

82. Furthermore, § 1681b(f) of the FCRA provides that "[a] person shall not use or obtain a consumer report for any purpose unless—(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification." 15 U.S.C. § 1681b(f). The circumstances under which a consumer report is authorized to be furnished are set forth in 15 U.S.C. § 1681b(a).

83. The FCRA permits a person or entity to access an individual's credit report when that person or entity has a "legitimate business need for the information" that is "connect[ed] with a business transaction that is initiated by the consumer." 15 U.S.C. § 1681b(a)(3)(F)(i).

84. In the advisory opinion, the CFPB now clarifies that it is interpreting this requirement (using or obtaining a consumer report without a permissible purpose) as a "strict" prohibition, rejecting the argument accepted by some courts that a user might not violate the FCRA if the user has a "reason to believe" that a permissible purpose applies.

**FIRST CAUSE OF ACTION**
**(Violations of 15 U.S.C. §1681b(f)) as to Defendant MHC**

85. Plaintiffs incorporate by reference all of the above paragraphs of this Class Action Complaint as though fully state herein with the same force and effect as if the same were set forth at length herein.

86.  15 U.S.C. § 1681b(f), reads:

   I.  Certain use or obtaining of information prohibited:

   A **person shall not use** or obtain a **consumer report** for any purpose unless-

   (1) the **consumer report** is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

   (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

87.  Defendant MHC violated 15 U.S.C. § 1681b(f)., when MHC obtained Plaintiffs' consumer reports without any permissible purpose or Plaintiffs' authorization.

88.  As a result of MHC's conduct and inactions, Plaintiffs suffered statutory damages of between $100 and $1,000.

89.  MHC's conduct and actions were willful, rendering MHC liable for statutory and punitive damages in an amount to be determined by this Court pursuant to 15 U.S.C. § 1681n.

90.  Alternatively, MHC's conduct and actions were negligent, rendering MHC liable for actual damages pursuant to 15 U.S.C. § 1681o.

91.  Plaintiffs are entitled to recover costs and attorneys' fees from MHC in an amount to be determined by this Court pursuant to either 15 U.S.C. §§ 1681n or 1681o.

92.  This Court has the equitable power to enjoin MHC from engaging in conduct that violates the Fair Credit Reporting Act, and Plaintiffs request that this Court exercise this equitable jurisdiction.

## SECOND CAUSE OF ACTION
**Invasion of Privacy as to Defendant MHC**

93. Plaintiffs incorporate by reference all of the above paragraphs of this Class Action Complaint as though fully state herein with the same force and effect as if the same were set forth at length herein.

94. MHC intentionally interfered, with Plaintiffs' solitude, seclusion, and/or private concerns or affairs.

95. MHC intentionally caused harm to Plaintiffs' emotional well-being by engaging in highly offensive conduct in the course of inquiring into their credit files.

96. Plaintiffs had a reasonable expectation of privacy in their solitude, seclusion, and/or private concerns or affair, including the control over his own personal information.

97. The intrusions by MHC occurred in a way that would be highly offensive to a reasonable person.

98. MHC acted tortuously, knowingly, intentionally, and willfully or in a conscious disregard of the rights of the Plaintiffs.

99. MHC had full knowledge or should have known of the damage that this intrusion on seclusion would cause.

100. Plaintiffs should be awarded actual damages including the mental anguish suffered.

## THIRD CAUSE OF ACTION
**(Violations of 15 U.S.C. §1681b(f)) as to Defendant CORELOGIC**

101. Plaintiffs incorporate by reference all of the above paragraphs of this Class Action Complaint as though fully state herein with the same force and effect as if the same were set forth at length herein.

102.    15 U.S.C. § 1681b(f), reads:

> I. Certain use or obtaining of information prohibited:
>
> A **person shall not use** or obtain a **consumer report** for any purpose unless-
>
> > (1) the **consumer report** is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
> >
> > (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

103. Defendant CORELOGIC violated 15 U.S.C. § 1681b(f)., when CORELOGIC obtained Plaintiffs' consumer reports without any permissible purpose or Plaintiffs' authorization.

104. As a result of CORELOGIC's conduct and inactions, Plaintiffs suffered statutory damages of between $100 and $1,000.

105. CORELOGIC's conduct and actions were willful, rendering CORELOGIC liable for statutory and punitive damages in an amount to be determined by this Court pursuant to 15 U.S.C. § 1681n.

106. Alternatively, CORELOGIC's conduct and actions were negligent, rendering CORELOGIC liable for actual damages pursuant to 15 U.S.C. § 1681o.

107. Plaintiffs are entitled to recover costs and attorneys' fees from CORELOGIC in an amount to be determined by this Court pursuant to either 15 U.S.C. §§ 1681n or 1681o.

108. This Court has the equitable power to enjoin CORELOGIC from engaging in conduct that violates the Fair Credit Reporting Act, and Plaintiffs request that this Court exercise this equitable jurisdiction.

## FOURTH CAUSE OF ACTION
### Invasion of Privacy as to Defendant CORELOGIC

109. Plaintiffs incorporate by reference all of the above paragraphs of this Class Action Complaint as though fully state herein with the same force and effect as if the same were set forth at length herein.

110. CORELOGIC intentionally interfered, with Plaintiffs' solitude, seclusion, and/or private concerns or affairs.

111. CORELOGIC intentionally caused harm to Plaintiffs' emotional well-being by engaging in highly offensive conduct in the course of inquiring into their credit files.

112. Plaintiffs had a reasonable expectation of privacy in their solitude, seclusion, and/or private concerns or affair, including the control over his own personal information.

113. The intrusions by CORELOGIC occurred in a way that would be highly offensive to a reasonable person.

114. CORELOGIC acted tortuously, knowingly, intentionally, and willfully or in a conscious disregard of the rights of the Plaintiffs.

115. CORELOGIC had full knowledge or should have known of the damage that this intrusion on seclusion would cause.

116. Plaintiffs should be awarded actual damages including the mental anguish suffered.

## DEMAND FOR TRIAL BY JURY

117. Plaintiffs request a trial by jury on all issues and counts so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs, individually and on behalf of the Classes, demands judgement against each Defendant as follows:

a. For actual damages provided and pursuant to 15 U.S.C. § 1681o(a) be awarded for each negligent violation as alleged herein;

b. For actual damages provided and pursuant to 15 U.S.C. § 1640(a)(1);

c. For statutory damages provided and pursuant to 15 U.S.C. § 1681n(a);

d. For statutory damages provided and pursuant to 15 U.S.C. § 1640(a)(2);

e. For punitive damages provided and pursuant to 15 U.S.C. § 1681n(a)(2);

f. For attorney fees and costs provided and pursuant to 15 U.S.C. § 1681n(a)(3), 15 U.S.C. § 1681o(a)(2) and 15 U.S.C. § 1640(a)(3);

g. A declaration that the conduct complained of violates the provisions of the Fair Credit Reporting Act, 15 U.S.C. § 1681b;

h. An order requiring that the Defendants return Plaintiff's confidential consumer report and destruction of any copies;

i. For any such other and further relief, as well as further costs, expenses and disbursements of this action as this Court may deem just and proper.

DATED: April 7, 2023                              Respectfully Submitted,

*/s/ Allen Edgar Robertson III*
SHAWN JAFFER
SB 24107817
ALLEN EDGAR ROBERTSON III
SB 24076655
ROBERT LEACH
SB 24103582
SHAKERIA NORTHCROSS
SB 24116836

JAFFER & ASSOCIATES, PLLC
5757 ALPHA RD SUITE 580
DALLAS, TX 75240
(T)**214.494.1871**(F)**888.509.3910**
(E)ALLEN@JAFFER.LAW ATTORNEYS@JAFFER.LAW
ATTORNEYS FOR PLAINTIFF