IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BETSY SANCHEZ OLVERA and WILLIE D. WILSON, individually and on behalf of all those similarly situated, | § § § § | |
| Plaintiffs, | § § | Civil No. 3:23-CV-00746-K |
| v. | § § | |
| MH CONSULTANTS, INC. d/b/a MANUFACTURED HOUSING CONSULTANTS and CORELOGIC CREDCO, LLC, | § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant CoreLogic Credco, LLC's ("Credco") Motion to Dismiss the Amended Complaint (the "Motion to Dismiss") and Memorandum of Law in support thereof, Doc. Nos. 39–40, Plaintiffs Betsy Sanchez Olvera and Willie D. Wilson's Opposition to Credco's Motion to Dismiss, Doc. No. 41, and Credco's Reply Memorandum of Law in Support of Its Motion to Dismiss the Amended Complaint. Doc. No. 43.

Upon consideration of the parties' submissions, the Court **GRANTS** Credco's Motion to Dismiss and **DISMISSES** Ms. Olvera and Mr. Wilson's claims against Credco without prejudice. Ms. Olvera and Mr. Wilson attempted to buy a mobile home from MH Consultants, Inc. d/b/a Manufactured Housing Consultants ("MH Consultants") on credit but asked MH Consultants not to look at their credit reports.

1

MH Consultants got the reports from Credco and looked at them anyway. Ms. Olvera and Mr. Wilson claim that this violated the Fair Credit Reporting Act ("FCRA"). Based on Ms. Olvera and Mr. Wilson's current complaint, the Court disagrees. Although Defendants' alleged conduct was less than praiseworthy, FCRA allowed Defendants to access Ms. Olvera's and Mr. Wilson's credit reports in connection with the potential mobile home sale despite Ms. Olvera's and Mr. Wilson's objections. The Court will permit Ms. Olvera and Mr. Wilson to replead their complaint because they may be able to allege facts that alter the application of FCRA to their case.

The Court begins explaining these conclusions with a review of the facts relevant to its opinion. Unless otherwise noted, the Court draws those facts from Ms. Olvera and Mr. Wilson's amended complaint and assumes that they are true. Doc. No. 27-1.

In January 2023, Ms. Olvera and Mr. Wilson contacted MH Consultants, a company in the business of helping buyers finance and purchase manufactured homes. *Id.* ¶¶ 10, 22. They told MH Consultants' representative, Edward Sandoval, that they were hoping to trade in their RV and get a credit on the purchase of a mobile home. *Id.* ¶ 24. At some point the conversation turned toward credit. Mr. Sandoval inquired about the balance due on the RV and asked for a "rough idea" of Ms. Olvera's and Mr. Wilson's credit scores, which they provided. *Id.* Based on this information, Mr. Sandoval gave Ms. Olvera and Mr. Wilson two tentative options. First, they could drop the idea of trading in their RV and make a large down payment on a mobile home loan. *Id.* ¶ 34. Second, they could use land they owned as collateral for the loan. *Id.*

2

¶ 25.  After Ms. Olvera and Mr. Wilson shot the latter option down, Mr. Sandoval gave them a "pre-qualification form" and told them that he could identify the best RV trade-in option after they filled it out.  *Id.* ¶ 26.  Ms. Olvera and Mr. Wilson filled out the form.  *Id.* ¶ 28.  In the last field on the form, they marked "No" in response to the prompt, "I will allow access to my credit report for pre-approval."  *Id.* ¶ 29.

MH Consultants nonetheless told Credco, a reseller of consumer reports, to pull Ms. Olvera's and Mr. Wilson's credit reports.  *Id.* ¶¶ 13, 45.  Credco pulled the reports on February 22, 2023.  *Id.* ¶ 32.

Two days later, Ms. Olvera and Mr. Wilson called Mr. Sandoval.  *Id.* ¶ 33.  After they informed Mr. Sandoval of the credit check, Mr. Sandoval reiterated that Ms. Olvera and Mr. Wilson could forgo trading in their RV and make a large down payment or put up their land as collateral for a loan.  *Id.* ¶ 34.  He alternatively suggested that they trade in the RV and make a down payment that would still be "high."  *Id.* ¶ 33.  Ms. Olvera and Mr. Wilson do not say how they responded to Mr. Sandoval's proposals, but it appears that they never accepted them.  They later attempted to get MH Consultants to remove Credco's credit inquiry from their credit reports without success, which soured them on doing business with the company.  *Id.* ¶¶ 35–42.

Ms. Olvera and Mr. Wilson then filed this suit against MH Consultants and Credco alleging violations of FCRA and state law.  Doc. No. 1.  Although Ms. Olvera and Mr. Wilson styled the suit as a putative class action, they subsequently declined to file a class certification motion by the deadline imposed by the Court.

Credco responded to Ms. Olvera and Mr. Wilson's complaint by moving to dismiss their claims. Doc. No. 13. Ms. Olvera and Mr. Wilson did not file an opposition brief, but, after their opposition deadline ran, they moved for leave to file an amended complaint dropping their state law claims and expanding their FCRA claims. Doc. Nos. 24, 27. The Court granted the motion. Doc. No. 37.

The amended complaint contains three claims, all brought under FCRA. Ms. Olvera and Mr. Wilson allege that MH Consultants and Credco violated a provision of FCRA that prohibits persons from using or obtaining consumer reports without a permissible purpose and another provision of FCRA that prohibits consumer reporting agencies from furnishing consumer reports without a permissible purpose. 15 §§ 1681b(a), (f); Doc. No. 27-1 ¶¶ 89–107. They also allege that Credco violated a provision of FCRA that requires consumer reporting agencies to maintain reasonable procedures to ensure that they furnish consumer reports only for permissible purposes. 15 U.S.C. § 1681e(a); Doc. No. 27-1 ¶¶ 108–19.

Credco now moves to dismiss the claims against it, and the Court grants the motion. The premise of Ms. Olvera and Mr. Wilson's claims is that Credco obtained, used, or distributed their credit reports without a purpose approved by FCRA. This is obviously true of the claims that Credco used, obtained, or furnished the reports without a permissible purpose, but it is also true of Ms. Olvera and Mr. Wilson's claim that Credco failed to maintain reasonable procedures to avoid furnishing credit reports without a permissible purpose. The Fifth Circuit has held that a party asserting the latter

4

type of claim must show an impermissible disclosure of a consumer report in addition to a procedural deficiency. *Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 266 (5th Cir. 2000). Because the Court finds that Credco permissibly accessed and distributed Ms. Olvera's and Mr. Wilson's credit reports for the purpose of facilitating a credit transaction among Ms. Olvera, Mr. Wilson, and MH Consultants, the premise of each of Ms. Olvera and Mr. Wilson's claims fails.

Under FCRA, a consumer reporting agency may furnish, and a person may use or obtain, a consumer report intended for use in connection with a credit transaction involving a consumer. 15 U.S.C. §§ 1681b(a)(3)(A), (f). The intended use is a permissible purpose so long as the transaction and the report meet two statutory conditions. The transaction must involve "the extension of credit to, or review or collection of an account of, [a] consumer," and the report must concern the same consumer. *Id.* § 1681b(a)(3)(A).

Judged by these standards, Credco complied with FCRA in pulling Ms. Olvera's and Mr. Wilson's credit reports. Ms. Olvera and Mr. Wilson were trying to buy a mobile home on credit, so a transaction "involving the extension of credit" was afoot. Doc. No. 27-1 ¶¶ 22–34; *cf. Fjeld v. JPMorgan Chase Bank, N.A.*, 2014 WL 12599403, at *3 (S.D. Tex. Feb. 11, 2014) (mortgage financing is a credit transaction); *Anderson v. Frederick Ford Mercury, Inc.*, 694 F. Supp. 2d 324, 332 (D. Del. 2010) (automobile installment contract). That transaction had progressed beyond the stage of hypothetical possibility, which might not have justified a credit check, to the point that

5

Ms. Olvera and Mr. Wilson submitted a prequalification form for financing, which did justify a credit check. *Compare Lampkin v. McAlister*, 2014 WL 12537071, at *6 (S.D. Tex. Oct. 3, 2014) (finding that prequalification submissions evidenced a credit transaction warranting a credit check), *rep. & rec. adopted*, 2014 WL 12537072 (S.D. Tex. Dec. 5, 2014), *aff'd sub nom. Lampkin v. Bank of Am., N.A.*, 644 F. App'x 366 (5th Cir. 2016) (per curiam), *with Miller v. Dish Network, L.L.C.*, 326 F. Supp. 3d 51, 67–71 (E.D. Va. 2018) (collecting cases holding that inquiring about a product or comparison shopping did not evidence a credit transaction warranting a credit check).

As FCRA requires, Credco limited the credit checks it performed for MH Consultants to match the scope of the credit transaction that had arisen. Credco only pulled the reports of Ms. Olvera and Mr. Wilson, the two consumers involved in the transaction and therefore the two proper subjects of inquiry under FCRA. 15 U.S.C. § 1681b(a)(3)(A). Considered in the context of the transaction among Ms. Olvera, Mr. Wilson, and MH Consultants, this establishes that Credco had a permissible purpose for its conduct. *Id.*

Ms. Olvera and Mr. Wilson resist this conclusion because they told MH Consultants not to pull their credit reports, but that fact is irrelevant. Doc. No. 41 at 6–7. Ms. Olvera and Mr. Wilson are on the wrong side of FCRA's distinction between situations in which a defendant must obtain consumer consent to a credit check and situations in which a defendant need not. The general provision of FCRA authorizing the acquisition, use, and furnishing of consumer reports in connection with credit

6

transactions is the one the Court just discussed. It does not speak in terms of consumer consent. 15 U.S.C. § 1681b(a)(3)(A). A sister provision does require an acquirer, user, or furnisher of a consumer report to obtain the consumer's consent—by opt-in or opt-out, depending on the circumstances—but the provision applies only if the consumer did not initiate the credit transaction. *Id.* § 1681b(c)(1). Since Credco argues, and Ms. Olvera and Mr. Wilson do not dispute, that Ms. Olvera and Mr. Wilson initiated the potential purchase of a mobile home from MH Consultants on credit, Ms. Olvera and Mr. Wilson are not entitled to the benefit of this provision. Doc. No. 40 at 13. Once Ms. Olvera and Mr. Wilson initiated a credit transaction, Credco could pull their credit reports and give the reports to their counterparty even if they withheld their consent. *See Lampkin v. Bank of Am., N.A.*, 644 F. App'x 366, 367 (5th Cir. 2016) (per curiam); *Padin v. Oyster Point Dodge*, 397 F. Supp. 2d 712, 720–21 (E.D. Va. 2005). That is true regardless of the fact that Ms. Olvera and Mr. Wilson explicitly refused consent by telling MH Consultants they did not want their credit checked. *See Long v. Bergstrom Victory Lane, Inc.*, 2018 WL 4829192, at *2 (E.D. Wis. Oct. 4, 2018); *Landeis v. Future Ford*, 2006 WL 1652659, at *4 (E.D. Cal. June 14, 2006).

The Court concludes that Credco permissibly pulled Ms. Olvera's and Mr. Wilson's credit reports in service of a proposed credit transaction involving Ms. Olvera, Mr. Wilson, and MH Consultants. Based on that conclusion, the Court **GRANTS** Credco's Motion to Dismiss and **DISMISSES** Ms. Olvera and Mr. Wilson's claims against Credco without prejudice. The existence of a permissible purpose for the credit

pulls negates Ms. Olvera and Mr. Wilson's claims that Credco obtained, used, or furnished their credit reports without a permissible purpose. 15 U.S.C. §§ 1681b(a), (f); *see also Norman v. Northland Grp. Inc.*, 495 F. App'x 425, 426–27 (5th Cir. 2012) (per curiam) (obtainment and use claim); *Kennedy v. Victoria's Secret Stores, Inc.*, 2004 WL 414808, at *3 (E.D. La. Mar. 3, 2004) (furnishing claim). It also negates Ms. Olvera and Mr. Wilson's claim that Credco failed to maintain reasonable procedures to avoid impermissibly furnishing consumer reports. A procedural deficiency is not actionable unless Credco actually furnished a consumer report for an impermissible purpose. *Washington*, 199 F.3d at 266.

Because the Court is not convinced that amendment of Ms. Olvera and Mr. Wilson's complaint would be futile, the Court will allow Ms. Olvera and Mr. Wilson to attempt to correct the defects in their pleading. If they have a good faith basis to do so, Ms. Olvera and Mr. Wilson **MAY FILE** an amended complaint no later than twenty-one days after the entry of this order. If Ms. Olvera and Mr. Wilson file an amended complaint, they shall attach to it a redline showing the differences between the amended complaint and the complaint it supersedes.

**SO ORDERED.**

Signed June 18th, 2024.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE

8